COURT OF APPEALS OF WEST VIRGINIA.    87

Jan'y Term,        B. and O. R. R. vs. Rathbone.        1865.

𝕎𝕙𝕖𝕖𝕝𝕚𝕟𝕘.

# BALTIMORE AND OHIO RAILROAD *vs.* RATHBONE.

## January Term, 1865.

1. It is competent for a common carrier to diminish and restrict his common law liability by special contract; and he may absolve himself in this manner from all liability resulting from every degree of negligence however gross, (if it fall short of misfeasance or fraud) provided the terms and language of the contract are so clear and definite, as to leave no doubt that such was the understanding and intention of the parties.

2. Where a party declares in assumpsit and seeks a recovery upon a special contract, he is bound by the terms thereof.

3. Where a party declares in assumpsit against a common carrier or bailee for hire, without regard to the bills of lading which he receives from the carrier for the transportation of goods, and which appear from their face to be special contracts to the stipulations whereof both parties are equally bound, he cannot introduce the bills in evidence, they not being applicable to any of the counts in the declaration.

4. The terms, "at the owner's risk," in the bills of lading in this case, which are declared to be special contracts, taken in connection with the other stipulations therein, are held to limit the carrier to such loss or damage only as might result from *ordinary* neglect : which is defined to mean that want of care and diligence which prudent men usually bestow on their own concerns.

5. The English rule, that, in cases of contract of shipment "at the owner's risk," in general terms, the question of diligence and neglect is out of the case, and that the carrier or bailee is wholly absolved from all responsibility whatever, is held to be contrary to that prevailing in American courts.

6. It is, therefore, error in the circuit court to refuse to instruct the jury, that, if they believed the contracts for transporting goods were special contracts, that the plaintiff could only recover under such special contracts ; and that if they believed the goods were lost by fire, and that the carrier or its agents and servants exercised ordinary care and diligence in transporting them, that the defendant was not liable ; and that if they believed the goods were shipped and transported under special contracts, and that they were lost by fire, and that the carrier, its agents and servants exercised such care as a prudent man would, as to his own goods, in protecting them from unforeseen accident which diligence and care could not guard against, that the plaintiff could not recover.

7. Where a declaration in assumpsit charges common carriers or bailees for hire, for loss or damage generally, and an agreement is proven showing that the transportation was at the plaintiff's risk, which imposes a different liability than that charged, and a verdict is rendered against the carriers, it should be set aside and a new trial granted for reason of the variance.

*John C. Rathbone* brought an action of trespass on the case in assumpsit, against the *Baltimore and Ohio Railroad*, in *Wood* county, in May, 1863. The declaration contained four counts, the first of which charged that at the special instance and request of the defendant the plaintiff caused to be shipped on board of the cars of the defendant, 1128 barrels of petroleum oil at *Parkersburg, West Virginia*, and the defendant undertook to safely and securely transport the same by its road to *Baltimore* and from thence by the *Philadelphia, Wilmington and Baltimore railroad*, and the *Camden and Amboy railroad*, to be delivered to *Wales, Wetmore & Co.*, at *Steamers' Dock, New York*; but that, by the carelessness and negligence of the defendant, only 998 barrels of the oil was delivered, and that the residue was lost. The second count charged that the defendant as a common carrier for hire between *Parkersburg* and *Baltimore*, at its instance and request, caused to be delivered to it certain barrels of petroleum oil at divers times belonging to the plaintiff, amounting in the aggregate to 1128 barrels, to be safely and securely transported to *Baltimore* at and for the reward of 80 cents per hundred pounds; but that, by its negligence and carelessness, 130 barrels were wholly lost to the plaintiff.

The third count was similar to the second in charging the defendant as a common carrier, but averred that the oil was to be safely transported to and delivered at *New York* for the reward of 80 cents per hundred pounds; and that it adopted the railroads before mentioned for the purpose, and that the defendant fraudulently intending to deceive and injure the plaintiff, did not deliver the oil at *New York*, but from the negligence, carelessness and unskilfulness of the servants of the defendant the cars on which the oil was being transported, collided with other cars of the defendant on its own road, whereby the cars were set on fire and the oil of the plaintiff was consumed and wholly lost to him.

The fourth count was the ordinary *insimul computassent.* The defendant demurred to the declaration, which was overruled, and the general issue was pleaded.

The jury found a verdict for the plaintiff, and assessed the damages at 1,250 dollars with interest from the 15th of February, 1863, and the court entered judgment thereon. Before the judgment was entered, the defendant moved the court to set aside the verdict of the jury, upon the ground that it was contrary to the evidence; but the court overruled the motion, and the defendant then prayed the court to certify the facts proven on the trial.

It was proven that on, and before the 6th of January, 1863, the defendant's regular charge for transporting petroleum oil from *Parkersburg* to the city of *New York* was one dollar and twenty cents for 100 pounds—that on, or about that day, the plaintiff by his agent applied to the defendant, to obtain a reduction of said freight and charge for transporting said oil, to, and from the places aforesaid—that on, or about the 21st of January, 1863, the defendants agreed to ship, and transport such oil from *Parkersburg* to *New York* at owner's risk, at the price and charge of eighty cents per 100 pounds, that these terms were made known to, and accepted by the plaintiff, and that all the oil shipped by the plaintiff over the defendant's railroad, referred to in this cause, was on the terms last mentioned.    That on the evening of the 29th of January, the defendant's car, No. 2260 loaded with the plaintiff's oil, left *Parkersburg* by the way of *Cumberland* en route for the city of *New York*—that the defendant's car No. 6164, loaded with the plaintiff's oil, left *Parkersburg* on the morning of the 30th day of January, 1863, en route to the city of *New York* via *Cumberland;* that at *Cumberland*, or very near that place, the said cars No. 2260 and 6164 were placed in the same train of cars, which train was drawn by the defendant's engine, No. 214.    That the first and second cars immediately in the rear of said engine were loaded, one with coal, and the other with lumber, and immediately behind said two last named cars, the said cars No. 2260 and 6164, (which were open cars or

gondolas,) in which the barrels of oil, standing on end, were placed. There were twenty-three other cars loaded with tobacco—one with lard, and the others with other goods—which were house cars enclosed. That cars that left *Parkersburg* ought to reach *Cumberland*, according to the regulations of the defendant's road, in about twenty-four hours after they left *Parkersburg*—that the engine attached to said cars with the oil, broke down at *Cumberland*. That the plaintiff, under like contracts as those above mentioned, shipped 2,000 barrels of such oil from *Parkersburg* to *New York* at the same rate and terms. It was also proven that as said oil was delivered to the defendant to be shipped as aforesaid by the agent of the plaintiff, the agent of the defendant delivered to the agent of the plaintiff seven certain bills of lading.

The bill of the particular oil alleged to have been lost, which is the same in substance as the others, is as follows:
"JANUARY 30TH, 1863.

Received of J. G. Blackford the following packages marked and numbered as described below, in apparent good order (contents and value unknown) to be transported from Parkersburg by the *Baltimore and Ohio Railroad* to *Baltimore*, and thence by *P. W. and B.* and *Camden and Amboy Rail Roads* to *New York*, there to be delivered to Wales, Wetmore & Co., or assigns, at *Steamers' Dock*, on payment of 80 cents per hundred and charges $      . And whereas in the transit from Parkersburg to their said place of ultimate destination, the packages aforesaid must pass through the custody of several carriers—it is understood, as a part of the consideration on which said packages are received, that the exceptions from liability, made by such carriers respectively, shall operate in the carriage by them respectively of said packages, as though herein inserted at length; and especially that neither said carriers, nor either, nor any of them shall be liable for leakage of any kinds of liquids, nor for losses by the bursting of casks, or barrels of liquids, arising from expansion and other unavoidable causes. Breakages of any kind of glass, carboys of acid, or articles packed in

glass, stoves, or stove furniture, castings, machinery, musical instruments of any kind, packages of eggs, or for loss or damage on hay, hemp, cotton, or the evaporation or leakage of alcohol, or leakage of oil of any description, or for damage to perishable property of any kind, occasioned by delays from any cause, or change of weather, or for damage or loss by fire, or for loss and damage on the sea and rivers. And it is further especially understood, that for all loss or damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier only, in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the said *Baltimore and Ohio Rail Road Company* in receiving the said packages to be forwarded, assumes no other responsibility for their safety, or safe carriage than may be incurred on its own road, and it is expressly confined to the roads and stations of the *Baltimore and Ohio* and *Northwestern Virginia Rail Road* companies. All goods carried by this company are charged at actual gross weight, excepting such articles as are provided for in our general Tariff.

| *Shipped on Steamer* | | *to* |
| MARKS. | OWNER'S RISK. | Weight, more or less. |
| R. | 139 Barrels Petroleum Oil. | 48.940. |

acc. J. C. Rathbone.

Guarantied against military seizure in transit on *Baltimore and Ohio Rail Road.*          JAMES MCALISTER, Agent,

B. and O. R. R. Co."

It is unneccessary to state here, any other facts certified, as the same were not considered by the court. It is proper to state, however, that they showed, that by the breaking of an axle of the engine drawing the train to which the cars containing the plaintiff's goods were attached, the engine was thrown off the track and the cars pressing forward, (those containing the oil being in the front of the train,) seven of them were consumed by the fire thrown out from the engine in its fall; and that on the 6th day of January, 1863, the regular freight on oil in barrels from *Parkersburg* to

*New York*, was 1 dollar and 20 cents per 100 pounds, that the plaintiff applied to the agent of the defendant for a reduction of the price of transportation, and the defendant agreed to reduce it to 80 cents per 100 pounds, if it was shipped at the "owner's risk," and that the plaintiff accepted the condition and shipped accordingly; and that it was proven by commission merchants in the city of *Baltimore* engaged in the shipping business, that the term "at owner's risk," by usage, exonerates railroad companies from responsibility for loss, unless goods are lost from carelessness or negligence.

The overruling the motion to set aside the verdict on the facts as certified, composed the first bill of exceptions taken by defendant.

The second bill of exceptions, after reciting the facts certified by the court as proven on the trial, contains the instructions to the jury for which the defendant moved the court, but which were refused, and to which refusal it excepted; and also the instructions given by the court, to which the defendant also excepted.    The instructions asked for by the defendant, and which are only necessary to be given here, the others not having been considered by this court, are the first, second, fifth and sixth, as follows:

"1st. If the jury believe from the evidence that the oil referred to in the declaration in this suit was contracted to be shipped and transported from, and to the places mentioned in the declaration, under special contracts—the plaintiff can only recover under such special contracts, and the terms and conditions of the same.

"2nd. That bills of lading delivered by the defendant or his agent to the plaintiff and given in evidence by him to the jury, are sufficient evidence of special contracts, and the terms under which the oil in the said bills of lading respectively mentioned, were to be transported by the defendant.

"5th. If the jury believe from the evidence, the said oil alleged to have been lost and destroyed and not delivered in *New York*, referred to in the evidence in this suit, was lost

by fire—and the defendants, its agents and servants, exercised ordinary care and diligence in transporting the same, the defendant is not liable:" which instruction the court also refused to give. Whereupon the defendant moved the court to instruct the jury as follows:—

"6th. If the jury believe from the evidence that said oil alleged to have been lost and destroyed, was shipped and transported under special contracts, and was so lost and destroyed, and that in transporting the same—the defendant—its agents and servants exercised such care as a prudent man would, as to his own goods, to protect said oil from accidents in its transportation—and that said fire was the result of an unforeseen accident, which could not have been prevented by ordinary diligence, then the plaintiff ought not to recover in this suit, for the oil so lost by fire."

The following are the instructions of the court to the jury; and it is thought proper to precede them by the explanatory remarks of the judge giving them.

"From the authorities on the subject of bailment, I deduce these principles as governing this case and instruct the jury accordingly: On *general principles* of bailment the carrier's reward of profit would bind him to *diligent* care and render him liable for ordinary neglect: that is to say if the carrier (in this instance the B. & O. R. R. Co.,) was guilty of ordinary neglect in the transportation of the oil, he is liable for the loss occasioned by such neglect. By the term "ordinary neglect" is meant the want of that care which a diligent man takes of his property: further, on principles of *Public Policy*, the carrier is liable to a greater extent than this. He is insurer against all loss except the act of God (which means inevitable mischance—such for example, as loss from lightning, tempest, earthquake, tornado, &c.,) or enemies of the country. He is liable even if he be robbed by irresistible force (except that force be the enemies of the country) and the reason why he is held so liable is—if a different doctrine obtained, the carrier might combine with robbers and yet do it so clandestinely that it could not be discovered. Whereas these rigorous principles are adopted

to stimulate them to that extraordinary care and attention which otherwise might vainly be expected.

Therefore in the absence of any special contract modifying or limiting his liability, the carrier is bound if he be guilty of *slight neglect.* By the term "slight neglect" is meant the want of that extraordinary care which very circumspect and careful persons take of their property. But the defendant in this case had a right to make a special contract that would relieve it from liability for a loss occasioned only by slight neglect. Hence if the jury believe from the evidence that a special contract is proven to have been made between these parties to the effect, that the oil was shipped at the "owner's risk" then the defendant is relieved from liability for loss occasioned by only slight neglect—but are still bound, notwithstanding such special contract for loss occasioned by ordinary neglect. The instructions, then, which I give to the jury with the foregoing explanations, are briefly stated thus: If the jury believe from the evidence in the case, that there was a special contract entered into between the parties to this suit, to the effect, that said oil was to be shipped at the owner's risk, and that the defendant did not use that care in, and about the transporting of said oil which a diligent person takes of his property, it is guilty of ordinary neglect.

2nd. If the jury, from the evidence, believe such special contract was made by said parties—and that there was no want of that care, on the part of the defendant, which a diligent person takes of his property, then the defendant is not guilty of ordinary neglect—and is therefore not liable.

3rd. If the jury, from the evidence, believe that no such special contract between the parties has been proven—and that the defendants did not in the transporting of said oil, exercise extraordinary care, or that care which very circumspect and careful persons take of their property—then they are guilty of slight neglect and (in the absence of such special contract) are liable."

The third bill of exceptions was taken upon the ground,

that the court permitted the bills of lading, which were claimed to be special agreements, to go to the jury, when the declaration contained no special count to meet the case, but only the common counts.

The defendant petitioned this court for a supersedeas, which was granted, assigning substantially for error, the matter contained in the bills of exception.

*G. H. Lee* and *B. Despard* for plaintiff in error.

The 1st and 2nd grounds of error assigned in the petition in this case, present substantially the same question, and we will consider them together. We maintain that the declaration is not sustained by the bills of lading offered in evidence; that these constituted special contracts between the owner of the oil and the company, which were totally different in legal effect from the contracts of bailment charged in the special counts of the declaration, and that being special contracts, neither could they be given in evidence in support of the general indebitatus money counts.

The 1st count charges a bailment in general terms as to a private carrier for transportation. It does not allege that the defendants are common carriers, nor profess to treat them as such. The 2nd and 3rd counts do charge them as common carriers, and allege contracts of bailment in general terms, which rendered the defendants *quasi* insurers, agreeing to assume the risk of loss from any cause whatever, save only the act of God or the public enemy. The 1st and 3rd counts differ from the 2nd as to the termini of the route upon which the transportation was undertaken. The 1st and 3rd charge responsibility upon the defendant for the entire route from *Parkersburg* to *New York*. The 2nd count charges an agreement to carry the oil from *Parkersburg* to *Baltimore*. But in none of the counts is any mention made of any exception of responsibility for loss by fire, or of any restriction or qualification of the common law liability of a carrier, by the agreement of the parties, but the same in all is stated to be absolute and unrestricted. Now, the bills of lading offered as evidence of the undertaking of the com-

pany, show contracts of very different import and legal effect. They show that the engagements were for the transportation of the oil from *Parkersburg* to *New York,* but that as the same was conveyed over different portions of the route by different carriers, the defendant was only to be liable for its safety or safe carriage over its own road; and the exceptions from liability made by such different carriers were to operate in the carriage of the oil by them respectively, as if they had been inserted in the bills of lading at length. Various exceptions from liability are expressly specified, such as leakage of fluids, bursting of casks, &c., breakage of glass, furniture, &c., *loss or damage by fire, &c.*; and it is declared on the face of the bills that the transportation is to be at the risk of the owner. Now, we desire to be informed on what principle can contracts thus essentially different in legal effect from those alleged in the declaration, be admitted as evidence in support of the latter, and a recovery be sought upon them? We suppose it will scarcely be contended, at this day, that a carrier cannot modify and restrict his liability by special provision in the contract of transportation. The right to do so was recognized in *England* as early as *Southcote's case,* 4. Co. Rep. 84; and afterwards by Sir Mathew Holt, in *Mors* v. *Sluc,* 1 Vent. 238; by Yates, J., in *Gibbon* v. *Paynton,* 4 Burr., 2301, and by Lord Ellenborough, in *Leeson* v. *Holt,* 1 Stark. R. 186, and in *Nicholson* v. *Willan,* 5 East, 513. Lord Ellenborough said it never had been denied by any express decision. It is now well settled both in England and in this country. Story on bailments § 548; and the numerous English cases cited in n. 4: Angel on Carriers, ch. 7, §§ 220 to 225 inclusive, and authorities cited in the notes. Pierce on Am. Railroad law, p. 420; and cases cited in n. 1. The only States, we believe, in which the contrary has ever been held are New York and Georgia. But the cases to that effect in New York, upon the authority of which the case in Georgia was decided, have been overruled. *Cole* v. *Goodwyn,* 19 Wend., 251; *Clark* v. *Faxton,* 21 Wend., 153; *Gould* v. *Hill,* 2 Hill's R., 623. The Georgia case is *Fish* v. *Chapman,* 2 Kelly's (Georgia) Rep., 349. For

after the opinion of the Supreme Court of the United States in the case of *The New Jersey Steam Navigation Company* v. *Merchants' Bank*, 6 How., 344, in which the right of the carrier to restrict his liability by special contracts was fully recognized, the courts of *New York* receded from the doctrine of former cases in respect to the competency of such special contracts, and adopted the views of the Supreme Court; and those cases are now regarded as fully overruled. *Parsons* v. *Monteith*, 13 Barbour, 358; *Moore* v. *Evans*, 14 Barbour, 624; *Dorr* v. *New Jersey Steam Navigation Company*, 4 Sand. L. R., 136; 1 Kern, Court of Appeals Rep. 485, S. C. The doctrine is perfectly reasonable in itself, and it is difficult to perceive any well-founded objection to it. The stringent common law liability of the carrier, was intended for the benefit of the owner. It is a privilege, however, which, like any other privilege, the party entitled to it may renounce or release if he see proper so to do. If he chooses to do so by making an express contract, there can be no reason why he should not be held to it. He is under no obligation to make such contract because he may insist upon having his goods transported by the carrier under the liabilities imposed by the law. But he may choose to do so in consideration of a reduced charge for transportation (as in this case) or for any other reason that he deems sufficient. He may choose to exonerate the carrier from the duty of insurance, and effect his insurance elsewhere. Whether it is his interest to do so, or whatever may be the motives that prompt him, is a matter entirely between him and the carrier, with which no third party has any concern. If he makes a special contract for the transportation of his goods, he ought to be bound by it as by any other contract; and after the course of the decisions upon the subject, the doctrine may be considered now as well settled in this country as it is in England. See the American cases in which it has been affirmed cited 11 Eng. Law and Eq. Rep., 513, n. 1.

Assuming then, that the company in this case had the right to limit and restrict their liability by special contract, we maintain that as the bills of lading offered, containing

such restrictions, showed contracts of bailment differing very materially in legal effect from the general contracts of bailment charged in the three special counts of the declaration, they could not be given in evidence under them, nor could there be a recovery upon them.

The rule is of universal application, that in actions upon contract, if the contract proved, vary in any material particular from that stated in the pleadings, the variance is fatal. The entire consideration must be stated and the entire act to be done in virtue of such consideration, with the time, manner and circumstances, and with all the parts of the proposition as thus stated, the proof must agree. 1 Greenl. Ev. § 66, and cases cited in n. 3. The rule is founded upon the principle that the party must recover *secundum allegata et probata*, and these must agree in every essential particular. Per Lord Mansfield in *Bristow* v. *Wright*, Doug., 665. The illustrations of the rule to be found in the books are so numerous and varied as to grieve the labor of research. We will content ourselves with citing a few only. In the leading case of *Bristow* v. *Wright*, above cited, which was an action against a sheriff for taking goods under a *fieri facias* without leaving a year's rent, the declaration in setting out the contract by which the rent was due, stated that it was payable by four quarterly instalments. Upon the trial the proof was that there was no stipulation as to the time of the payment of the rent, and the plaintiff was non-suited. So where a plaintiff declared on a covenant to repair at all times, and the covenant produced contained the additional words, "and at furthest within three months after notice," the variance was held fatal. *Horsefall* v. *Testar*, 6 Taunt., 385. (2 Eng. C. L. R., 146). So it has been held that a promise laid absolutely, is not supported by proof of a promise in the alternative; *Penny* v. *Porter*, 2 East., 2; and cases cited in n. (a) to that case; or an absolute promise by proof of a conditional one. *Churchill* v. *Wilkins*, 1 T. R. 447. *Brown* v. *Knill*, 2 Brod. and B., 395. Other cases to the same effect cited 1 Stark. Ev. 83 and n., and 1 Chitty's Plead., ch. 4, title "Declaration," p. 270 to 276. So in

Virginia, where the declaration alleged a written agreement, without stating any period to which its operation was limited, and when the agreement was produced it appeared that a note was added at the end of it, by which its operation was limited to a certain day named, the variance was held fatal. *Newell* v. *Mayberry*, 3 Leigh 250. And where the contract alleged was to locate a treasury warrant and survey and patent the land, it was held not to be supported by a contract to locate the warrant and survey the land. *McAlexander* v. *Montgomery*, 4 Leigh, 61.

But the very question we are discussing has been directly decided. In an action against a carrier, the declaration charged an agreement to carry from a certain point to another and there deliver &c., in general terms, and the evidence was of an undertaking to carry and deliver, &c., *fire and robbery excepted*, it was held that the exception should have been stated in the declaration, and as it was omitted the variance was fatal. *Latham* v. *Rutley*, 2 Bam. & Cross, 20. (9 Eng. C. L. R., 10). *Ferguson* v. *Cappeau*, 6 Har. & J., 304. *Smith* v. *Moore*, 6 Greenl. R., 274, S. P. In another case where the allegation was that the defendant undertook to transport the goods at his own risk against all danger except the dangers of the seas, and the paper offered in evidence showed that he took upon himself all risks except those of the seas, it was considered that liability for the risk of transportation, except that of the seas, was materially different from liability for all risks with the same exception, and the variance was held fatal. *Bridge* v. *Austin*, 4 Mass. Rep., 115. And a misdescription of the *termini* in a contract of a carrier is held a vital variance. *Tucker* v. *Cracklin*, 2 Starkies' C., 385. (3 Eng. C. L. R., 394). Mr. Chitty fully recognizes this doctrine in his precedents of declarations against carriers, and the notes upon them. 2 Chit. Pl., 356 to 367. And the doctrine is distinctly affirmed in 2 Greenl. Ev., § 209.

Upon an examination of the cases reported, the court will find that a distinction has been made between the cases in which the carrier has sought to limit and restrict his liability,

100    COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,       B. and O. R. R. vs. Rathbone.        1865.

by a mere notice put forth by him that the transportation is to be at the risk of the owner, and those in which such is the express agreement of the parties upon valuable or other sufficient consideration. The distinction is adverted to by Mr. Angell in his excellent and copious treatise upon the law of carriers, 227, and in Smith's Mercantile Law, p. 364, n. And we submit that it may well be sustained upon the obvious reason that in the former, the notice is the act of the carrier alone, without the consent or concurrence of the owner, whilst in the latter, it is the mutual agreement of the parties. Indeed the right of the carrier to restrict his liability by mere notice, was for a long time strongly contested, and only established after a severe struggle in England, whilst in this country it has been questioned and denied in several decisions, which, however, distinctly recognize the right to do so by express agreement. Of these, the important case of the *New Jersey Steam Navigation Company* vs. *The Merchants' Bank*, 6 How., 344, has already been cited, in which the right of a carrier to exempt himself from responsibility by notice is denied, but the right to do so by special agreement distinctly affirmed. Other cases will be found to the same effect. Story on Bail., §§ 550–570; 2 Kent's Com. 607; Smith on Mer. Law, 362; *Batson* vs. *Donovan*, 4 B. and Ald., 21; *Riley* v. *Home*, 5 Bing. R., 217; *Birkett* v. *Willan*, 2 Barn. and Ald., 356; *Brooke* v. *Pickwick*, 4 Bing. R., 218; *Lowe* v. *Booth*, 13 Price, 329; *Wild* v. *Pickford*, 8 Mees. and Welsby, 461; *Maving* v. *Todd*, 1 Stark. Cas. 72; (2 Eng. C. L. Reports, 301); 4 Camp. 224, S. C.; *Leeson* v. *Hoult*, 1 Stark. Cor. 186, (2 Eng. C. L. Rep., 349); *Anonymous* v. *Jackson*, Peake's Ad. N. P. Ca., 186; *Gibbon* v. *Paynton*, 4 Burr., 2301; *Carr* v. *Lancashire Railway*, 14 Eng. L. and Equity Rep., 340; *Shaw* v. *Y & N. M. Railway Company*, cited Angell on Cor., § 440; *Chiffendale* v. *The L. & Y. Railway Company*, 7 Eng. Law and Equ. Rep., 395; *Morville* v. *The Great Northern Railway Company*, 10 Eng. L. and Equ., 368; *Austin* v. *The Manchester &c., Railway Company*, 11 Eng. Law and Equ. Rep., 506; *Hughes* v. *G. W. Railway Company*, 25 Eng. Law and Eq. Reports, 367, and

*York &c.*, *Co.* v. *Crisp*, Ibid., 397; *Owen* v. *Burnett*, 2 Crom. and Mees., 353; (4 Tyrnhitt, 163, S. C.); *Austin* v. *Manchester &c. Railway Co.*, 11 Eng. L. and Eq. Rep., 513; *Beck* v. *Evans*, 16 E., 227; *Garnett* v. *Will*, 5 B. and A., 57.

If the court, however, shall decline to follow these, the most recent decisions of the English courts, but shall adopt for its guide, those in which it is held that fraud or gross negligence must be shown to charge the carrier where the shipper has assumed the risk of transportation, then it must be held that the circuit court erred in refusing to give the third instruction, which supposed the case of loss by accidental fire, without fraud or gross negligence on the part of the defendant.

Or if, contrary to our expectation, the court should decline to follow either of the classes of cases just mentioned and should hold that a carrier, notwithstanding a special contract that the transportation was to be at the risk of the owner, and notwithstanding an express exemption from responsibility for loss by fire, is yet bound to use that greater degree of care and diligence, the want of which is termed " ordinary negligence," but is not liable for a loss occasioned by an unforeseen accident which could not have been prevented by ordinary diligence, then it must be held that the circuit court erred in refusing to give the 5th and 6th instructions. If the last view is maintained by this court, these instructions propounded the law correctly, and it was the right of the defendants that they should be given in the terms asked for. *Baltimore and Ohio R. R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. 448. *Same* v. *Lafferty*, ibid, 478.

The verdict cannot be sustained on the 2nd count because (besides the variances already mentioned, of the bills of lading from the contract alleged in it) the termini of the route, and the character of the engagement are entirely different, that count alleging a contract to transport from *Parkersburg* to *Baltimore* and there deliver without saying to whom, whilst the bills of lading show a contract of transportation from *Parkersburg* to *New York*, and for delivery of the goods there to certain persons named *Wales, Wetmore &*

Co. or assignors, at *Steamers' Dock.* The verdict cannot be. sustained upon the 3rd count, because that count charges that the loss was occasioned by a collision of the train on which the oil was being transported with another train of cars upon the same road, whereas there is no proof of any such collision, the proof being clear that the loss was occasioned by the accidental breaking of the axle of one of the wheels of the engine. So that the plaintiff must be confined to the 1st count in his declaration, in which he alleges a bailment as to a private and not a common carrier.

If, however, we are mistaken in this, it will be remembered that the declaration in all its special counts was upon a general bailment, and contained no allusion to any exception of risk of loss by fire or any other cause whatever, and none to the important stipulation that the risk of the transportation had been assumed by the plaintiff. The recovery was not sought upon the ground that, notwithstanding the special contract by which the plaintiff assumed the risk, and especially exempted the defendants from responsibility for loss by fire, yet that they were still liable because of some act amounting to misfeasance or an abandonment of the character of carrier, or because of any alleged breach of duty on the part of the defendants to provide proper and sufficient engines, or because of that degree of negligence which, according to some of the earlier cases, would deprive the defendants of the benefit of their contract. It was rested upon the general duty of the carrier to carry and deliver, &c., and of negligence in the discharge of that duty. The evidence, however, showed that the risk had been assumed by the plaintiff for a valuable consideration, to wit: the reduction of one full third the usual freight charge and that there was an express exception of the risk of loss by fire. It also showed that the loss was occasioned by fire, accidently communicated to the oil whilst in course of transportation. Now as we have already endeavored to show, here the case should have ended, and would have ended if the court had given the 1st and 2nd instructions asked for by the defendant. The court, however, refused to give

COURT OF APPEALS OF WEST VIRGINIA.    103

Jan'y Term,        B. and O. R. R. vs. Rathbone.        1865.

those instructions and permitted the plaintiff to recover *upon this declaration*, upon the ground of a want of that care which a diligent person takes of his own property, and which was called "ordinary neglect."

We insist that even if the declaration had been framed upon the special contracts, and had contained the necessary allegations to admit proof of acts of misfeasance or renunciation of the character of carrier, or of such negligence as would entitle the plaintiff to recover (in the event this Hon. court shall be of opinion that the special contracts can be in this way controlled,) yet that there is no such proof of misfeasance or renunciation of the character of carrier, or of such negligence as can have that effect.

We suppose it will not be denied that in a case of special contract, where the plaintiff seeks to recover for a loss within the exception of the contract, upon some ground which, as he contends, controls the exception and deprives the defendant of the benefit of it, the *onus probandi* is upon him. This is the rule even in cases of notices. Angell, § 276, § 473; Story Bail. 573. Now we ask where is the proof of any such ground of recovery in this case? Certainly there is no proof of any act of misfeasance on the part of the defendant or which amounted to a renunciation of the character of carrier, which it had assumed. And if this court will ignore the special contracts between the parties for the transportation of the oil or, overruling the more recent English cases, shall apply to such special contracts the rule which is applied in the earlier cases to notices, and hold the carrier, notwithstanding such special contract, still responsible for what is termed "gross negligence," or "ordinary negligence," or by whatever epithet it may be called, still, we insist that the plaintiff has wholly failed to make out such a case.

We submit that the verdict is plainly unsupported by the facts certified, and we can only account for it upon the supposition that the jury must to some extent, have partaken of the prejudice so commonly found to exist against trading corporations supposed to be wealthy and powerful, and

which, perhaps, they considered (as Lord Coke intimates,) had neither a body to be imprisoned nor a soul to be excommunicated.

*J. M. Jackson* for the defendant in error.

This was an action brought by *J. C. Rathbone*, against the *Baltimore and Ohio railroad company*, the plaintiff in error, in the circuit court of the county of *Wood*, to recover the value of certain petroleum oil, alleged to have been lost by the appellants, who had engaged as common carrier to transport the same for hire, from *Parkersburg* in said county of *Wood*, to the city of *New York*, and while the same was in transition between said points.

Upon the trial of the case in the court below, several points were made which are relied upon here as error: and

*First*, It is contended that the court ought not to have permitted the several bills of lading offered, to go in evidence, because they set out a special agreement, when the declaration showed nothing but the common counts: Bill of exceptions No. 3, page 26. The general rule is that the contract should be proved as laid in the declaration. By an examination of the same, it will be seen that it sets out the contract in nearly the words of the bill of lading, that is, so far as the same are applicable to the subject matter of this suit. These bills do not, as contended, modify or restrict the carrier's liability. There are no exceptions in them that go to the obligation of the contract itself, and in such cases the declaration may be general, without any mention of the exceptions; the proof of which at the trial will be no variance. Now, the court will perceive that the dates, amounts and price to be paid, the place of shipment, the place of destination, and the names of the consignees are the same in the declaration and bills of lading.

But, again, the bills were not offered to show a contract, but to show a receipt for the goods, and for that they were clearly admissible. The formal acknowledgment of the receipt of the goods, and an engagement to deliver them to the consignee or his assigns. Angell on Carriers, 223–464.

But the bills were offered also, to prove the plaintiff's bill of particulars, and for that purpose they were admissible, as they correspond in every material particular. If, then, the court did right in permitting said bills to go in evidence, there was no error in refusing to give instructions Nos. 1 and 2 asked for by the plaintiff in error, as they were predicated on a wrong statement of the facts.

*Second,* It is contended that the court erred in refusing to give the other instructions asked for by the plaintiff in error, and in giving those which it did give. The answer to this is, that the other instructions asked for by the plaintiff in error are abstract propositions; that they are based upon a supposititious case; and that they do not propound the law correctly.

Conceding, however, that these bills of lading set up a special contract, we claim that " the utmost effect that can be given to it, both in England and this country, although as broad and absolute in its terms as it can be, will not discharge the carrier from liability for *negligence, misfeasance* or *want of ordinary care,* or from accountability for losses occasioned by a *defect in the vehicle* or mode of conveyance used in transportation." Angell on Carriers, Sec. 275, *Brooke* vs. *Pickwick,* 4 Bing. 218; 13 Eng. Com. Law Rep. 404; 13 Wendall, 611; 6th Howard's S. C. Rep. 344; Smith's Leading Cases, vol. 1, page 327.

It is further contended that the court below in its instructions, laid down the law incorrectly as to what constitutes negligence and ordinary care. On these points Story on Bailments is relied on; Sections 11 and 17.

Upon the whole, I claim that there is no error in the judgment of the circuit court of *Wood* county, and that the same ought to be affirmed.

BERKSHIRE, President, delivered the opinion of the court.

The questions arising in this case involve the rights, duties and responsibilities of common carriers, and are, therefore, of the highest consequence, not only to that numerous and important class of persons, but also to the

public at large. Being, therefore, required as we are, to settle and declare the law of the State relating to a subject of such general importance, it is to be regretted that so little aid can be derived from the source to which we would naturally turn for the most direct and satisfactory authority; I mean, of course, the adjudications of the State of Virginia, which, it will be found reflect little or no light on these important and practical questions. Being deprived of such aid we are obliged to resort elsewhere for the law of the subject, and after careful and anxious consideration and diligent examination of the very numerous and somewhat conflicting authorities, we have deduced such conclusions as we think are fully sustained by the most *numerous* and reliable authorities on the subject, which we proceed to state as concisely as practicable.

*First*, The court is of opinion, that it is competent for a common carrier to diminish and restrict his common law liabilities by special contract, and that he may, by express stipulations, also absolve himself from *all* liability resulting from any and every degree of negligence however gross, (if it fall short of misfeasance or fraud,) provided the terms and language of the contract are so clear and definite as to leave no doubt that such was the understanding and intention of the parties. And further, that to allow a party, by declaring in assumpsit, as in this case, to seek a recovery on a special contract and yet not be bound by it, would involve a plain legal absurdity. See Angell on Common Carriers, sec. 10, 11, 12, 15, 220; Story on Bailment, sec. 18; James on Bailment, sec. 22.

*Second*, That the freight bill or bills of lading introduced by the defendant in error, constitute special contracts, and that both parties are bound by the same and all the stipulations therein contained. Angell on Common Carriers, sec. 223.

*Third*, That the defendant in error having declared in assumpsit against the plaintiff in error, as a common carrier or bailee for hire, without regard to the special contracts, the same were not applicable to any of the counts in the

declaration and ought not to have been allowed to go to the jury in support of the same. Angell on Common Carriers, sec. 440.

*Fourth*, And the court is further of opinion that the words "at the owner's risk," contained in the bills of lading, or contracts, taken in connection with the other stipulations therein contained, were understood and intended by the parties in this case to limit the plaintiff in error to such loss or damage only as might result from *ordinary* neglect, by which is meant the want of that care and diligence which prudent men usually bestow on their own concerns—which is defined in the books to be ordinary neglect.

*Fifth*, That although it is held in England in cases of contract of shipment or transportation "at the owner's risk," in general terms, puts the question of diligence and neglect out of the case, and exonerates the carrier or bailee from *all responsibility whatever*, according to the modern authorities cited by the learned attorney for the plaintiff in error, yet we are not disposed to extend the doctrine further than it was carried by the supreme court of the United States in the case of the *New Jersey Steam Navigation Company* vs. *The Merchants' Bank*, 6 Howard Reports 344: and consider that case as settling and declaring the law concerning common carriers and bailees for hire, which should prevail in this country.

*Sixth*, The court is therefore of opinion, that the circuit court erred in holding, as it seems to have done, that the bills of lading did not constitute *special* contracts between the parties, and consequently erred also in refusing to give the first, second, fifth and sixth instructions asked for by the plaintiff in error, and in giving in lieu thereof those which it did give

*Seventh*, That the court further erred in refusing to set aside the verdict and award a new trial, as the facts certified by the court show that there was a special contract and agreement between the parties for the transportation of the oil at the plaintiff's risk, which imposed upon the defendant a different liability from that charged in the declaration:

and consequently the verdict should have been set aside for this variance and this alone, and a new trial granted and the plaintiff allowed to amend his declaration if he should ask leave to do so.

*Eighth,* That, as the averments in the declaration are such as would render the defendant liable as a common carrier or ordinary bailee for hire, in the absence of any special contract, the circuit court did not err in overruling the demurrers to the same.

Judgment reversed, and cause remanded to circuit court for further proceedings.