# Doyle *v.* Central Railroad Company of New Jersey, Appellant.

*Railroads—Passengers—Parcel check—Limitation of liability—Loss of baggage—Negligence—Contract.*

1. Where a person having a railroad ticket takes a dress suit case, and a hatbox to the parcel room of the railroad station, and after paying ten cents for each parcel receives therefor two parcel checks on which there is printed in small letters a limitation of liability of the company to the amount of $10.00 for each parcel, and no notice

is given to him by the attendant of the limitation of liability, and no opportunity is given to him to read the writing on the check before he pays his money, and no questions are asked of him as to the value or character of the articles contained in the packages, the passenger will not be bound by the limitation, and if the parcels are lost by the negligence of the company, he may recover their full value.

2. Where a passenger receives from the carrier a paper which, from the circumstances of the transaction, he has a right to regard merely as a voucher or receipt to enable him to follow and identify his baggage, and no notice is given to him that it embodies the terms of a special contract, or is intended to subserve any other purpose than that of a voucher, his omission to read it is not per se negligence, and he is not, as a matter of law, bound by its terms. And the question whether in a given case, the passenger accepted it with notice of its contents, or with notice that it contained a special contract, so as to acquaint himself with its contents, is one of evidence for the jury. An attempt by words on such a check to limit the carrier's liability for loss of baggage will be wholly unavailing unless the carrier shows that the passenger, with knowledge of such limitations, agreed that it might be made, and that such was the understanding of the parties.

Argued Oct. 11, 1910. Appeal, No. 41, Oct. T., 1910, by defendant, from judgment of C. P. No. 2, Phila. Co., on verdict for plaintiff in case of Michael Francis Doyle v. Central Railroad Company of New Jersey. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover the value of a dress suit case, a hatbox and their contents. Before BARRATT, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

I instruct you, therefore, that if you find in favor of the plaintiff upon the question of negligence as it has been submitted to you, then you would be at liberty to render a verdict in his favor for the full amount of his claim, or for such an amount as you believe would properly represent the value of the goods which it is conceded were deposited by him with the defendant company, and never returned to him.

Verdict and judgment for plaintiff for $254.25. De-- fendant appealed.

*Error assigned* was portion of charge quoted above.

*Arthur G. Dickson,* of *Dickson, Beitler & McCouch,* for appellant.—The plaintiff was bound by the limitation provided in the check: Jacobs v. Central R. R. Co., 208 Pa. 535; Fonseca v. Steamship Co., 153 Mass. 553 (27⁻ N. E. Repr. 665); Cau v. Ry. Co., 194 U. S. 427 (24 Sup. Ct. Repr. 427); McMillan v. R. R. Co., 16 Mich. 79; Van Toll v. Southeastern Ry. Co., 12 Common Bench Rep. (N. S.) 75 (1862); Parker v. Ry. Co., 46 Law Journal Queen's Bench (N. S.), 768; Terry v. Ry. Co., 62 S. E. Repr. 249.

*W. B. Linn,* for appellee, cited: Lancaster County. Nat. Bank v. Smith, 62 Pa. 47; Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297; Wright v. Adams Express Co., 43 Pa. Superior Ct. 40; Rowdin v. R. R. Co., 208 Pa. 623.

OPINION BY ORLADY, J., March 3, 1911:

This action is brought to recover the value of a dress suit case, a hatbox and the contents of each, which were deposited in the package or parcel room of the defendant company in its station in New York city, under the following circumstances:

The plaintiff intending to take passage on a train of the defendant company, went to its station, and on making search for his railroad ticket was unable to find it. He opened up his dress suit case to examine his clothing, and noticed that a waistcoat he had worn the previous day was missing. Not wishing to carry his baggage back to his hotel where he assumed that he had left his ticket, he went to the parcel or check room in the general waiting room at 12:50 P. M. and handed to the attendant in charge the mentioned articles for deposit until he would

return, and, after paying to the person in charge the sum of ten cents for each parcel received from him two separate checks which he put in his pocket without reading.

He hastened to the hotel at which he had passed the night, and found his missing clothing and ticket and returned to the parcel room at 2 P. M. to secure his baggage and take a train that was then about due. When the parcel checks were presented to the person in charge of that room, the plaintiff was informed that "about fifteen minutes after the packages were left there a man came rushing into the station in a hurry, said he had lost the checks, and we gave the packages to him at about 1:20 P. M. and the property has never been recovered." Complaint was at once made and the plaintiff was taken to the general baggage superintendent of the company to have a record made of the loss, and the parcel checks were there surrendered by him to that officer. The total value of the articles lost was $254.25.

There is no controversy over the facts of the case. The plaintiff had his railroad ticket, and availed himself of the convenience of the defendant's parcel room; he paid the charge exacted by the defendant; the property described was personal baggage within all definitions; there was no contributory negligence on his part, and the loss was occasioned by the inexcusable negligence of the package room attendant in surrendering to a stranger the plaintiff's property, which had been in his possession for but half an hour, and without any proper identification.

The defendant concedes all this, but urges that on account of a printed statement on the reverse side of the check which was accepted by the plaintiff, a contract became effective between the parties, which by its terms limited its liability to $10.00 for each parcel. The original checks given to the plaintiff had been destroyed, but sufficient proof was made of the checks in use at the time, to warrant the admission in evidence of a duplicate in form and terms. It appears that the entire check is in

three parts, with perforations between the sections. The upper part is separated from the middle one when the parcel is offered, and is attached to it by a string; the middle part is retained by the clerk, and on it there are printed instructions in regard to the care of the parcel and its delivery; the third or lower portion has printed on its face identification numbers and letters and "Package Room. 10 cts. each 24 hours or fraction thereof. Value of articles limited to $10.00. Present this duplicate check to claim article. Storage limited to 90 days, after which time articles may be sold for accrued storage charges." And at the bottom, printed in red ink, are the words, "N. B. See other side, value of articles represented by this check limited to $10.00, unless greater value is declared when deposited." On the reverse side of this part of the card, which is the part given to the person depositing the parcel, the following is printed in black ink.

"The party accepting this duplicate tag check hereby agrees that in consideration of the low rate at which it is issued, that no claim in excess of $10.00 shall be made against the Railroad Co. for the loss, or injury to, of any package, valise, or other article for which this check has been issued"—followed in red ink words—"unless a greater value is declared at the time of deposit and proportionate charge paid for the custody thereof." Each of these three parts are numbered and lettered for identification.

No inquiry was made by the attendant in charge of the package room in regard to the value or character of the articles contained in either package, and no notice was given of any special condition or limitation of liability on the back of the check given to the plaintiff. The contention is, that the acceptance of such a check constituted a binding contract between the parties "even though the plaintiff put the checks in his pocket without reading them."

In determining the character of the transaction, the

printed matter on the reverse side of the middle section of the card (which so far as the owner of the parcel is concerned, was secret, and intended for the information of the company's agent alone), is important. The owner of the parcel does not see this card, and it is preserved by the company. The words are as follows: "Instructions. These tag checks must be issued in consecutive order of numbers—they must be filled out in ink only, and full information required must be given. The duplicate of this check will be detached and given to person leaving articles on storage, after string tag check has been securely attached to the article and storage charge for first day collected. Upon presentation of duplicate tag check collect additional charge if any and deliver article. The string and portion of tag shown must be left on article when delivered. If duplicate is lost require person to give full description of articles, and if description agrees, take receipt on two copies Form 9007. Upon delivery of articles send this tag with duplicate to Auditor Passenger Traffic with report." The order of the transaction being, first, securely to attach the string tag check to the article; collect the storage charge for the first day; and then detach the duplicate tag check and give it to the person leaving the article on storage, so that the first opportunity the owner would have to see the terms of this alleged contract would be after he had paid his money and delivered his property to the agent of the company.

The serial numbers of the tags given to the plaintiff were alleged by the company to be 131,924 and 131,925 which give some indication of the magnitude of business of this character which it transacts. To require that the fine print on such tags should be read by the person depositing the parcel, while it is being tagged at the window, conceding the necessary time for old and young, educated and uneducated to do so, would frustrate the very purpose of such a system. To simply hand to him such an important limitation of its liability, after the company had received the passenger's money, and hold him

to its terms despite their admitted negligence and without notice of any kind, would be unreasonable, and such a procedure is not authorized by any decision brought to our notice. The usual baggage check, delivered to a passenger upon receiving his baggage is a receipt, merely intended to afford evidence of ownership and for identifying the baggage; it is in no sense a contract of carriage between the carrier and passenger: Hickox v. R. R. Co., 31 Conn. 281 (83 Am. Dec. 143); Isaacson v. N. Y. Cent. & Hudson R. R. Co., 94 N. Y. 278; s. c., 46 Am. Ref. 142. It is intended to serve a special purpose and cannot have grafted upon it, without notice, an exemption of all or partial liability for its loss or injury.

And the cases relied on by the appellant do not hold otherwise. In Crary v. R. R. Co., 203 Pa. 525, the plaintiff was riding on a reduced rate excursion ticket; while in this case the tag given does state "in consideration of the low rate at which it is issued," this does not necessarily mean that it is a reduced, or a special rate, nor does the price "ten cents each 24 hours or fraction thereof—limited to 90 days" on its face suggest that it is a low rate; ten cents per day; $9.00 for the ninety days would practically be the full value of the $10.00 parcel, on the company's own showing. In Crary v. R. R. Co., 203 Pa. 525, the court says: "The burden was on the plaintiff to submit some proof of negligence, and in the absence of any, the jury ought not to have been allowed to guess that the carrier had been negligent," and further, that the plaintiff's injuries might have been caused by matters "of which the company had neither actual nor constructive notice, nor ought reasonably to have been aware of, and it could not, therefore, have been presumed to have been guilty of negligence against this specially contracting passenger." In the case before us it is conceded that the company was negligent and that such negligence was the sole cause of the plaintiff's loss.

In Jacobs v. Central R. R. Co., 208 Pa. 535, we have another excursion ticket, sold at a reduced rate and for

a limited time.  The contract or ticket "was not a small piece of pasteboard, such as is ordinarily used for tickets between stations, on the same line, but a paper of some size, setting forth on its face—not in small type, unlikely to attract attention, but, clearly, prominently and legibly—the terms on which it had been issued . . . . so far as the terms of the contract appeared on the face of her ticket, and were reasonable, she was bound by them."

Independent of our common knowledge of such matters, the dictionary definition of tag, coupon or package check, as this card has been called, implies that it was of a small and convenient size for the owner's use so as easily to be carried for the identification of his property. In this case the slip or tag was such a paper or pasteboard and from the amount of printing on it, the type must have been small and not clearly legible to ordinary sight. The plaintiff did not read it, the transaction was hurriedly concluded, without notice of its terms, and the consideration mentioned does not appear to us as reduced or low in the light of the services rendered in regard to his property.

In Fonseca v. Cunard Steamship Co., 153 Mass. 553, the ticket covered with print and writing the greater part of two large quarto pages.  ". . . . it contained elaborate provisions in regard to the rights of the passengers on the voyage, no one who could read could glance at it without seeing that it undertook expressly to describe the particulars which should govern the conduct of the parties until the passenger reached the port of destination.  In that particular it was entirely unlike the pasteboard tickets which are commonly sold to passengers on railroads."

The true rule seems to be that where the passenger receives from the carrier a paper which, from the circumstances of the transaction, he has a right to regard merely as a voucher or receipt to enable him to follow and identify his baggage, and no notice is given to him that it embodies the terms of a special contract, or is

intended to subserve any other purpose than that of a voucher, his omission to read it is not per se negligence, and he is not, as a matter of law bound by its terms. And the question whether in a given case, the passenger accepted it with notice of its contents, or with notice that it contained a special contract, so as to acquaint himself with its contents, is one of evidence for the jury: 3 Am. & Eng. Ency. of L. 559 (2d ed.), and cases cited. An attempt by words on such a check to limit the carrier's liability for loss of baggage will be wholly unavailing unless the carrier shows that the passenger, with knowledge of such limitations agreed that it might be made, and that such was the understanding of the parties: Cole v. Goodwin, 19 Wend. 251, 32 Am. Dec. 470; Isaacson v. N. Y. C. & H. R. R. Co., 94 N. Y. 278, 46 Am. Rep. 142; B. & O. R. R. Co. v. Rathbone, 1 W. Va. 87, 88 Am. Dec. 664; B. & O. R. R. Co. v. Campbell, 36 Ohio, 647, 38 Am. Rep. 617; Lawson on Car. 455, 460; Thomp. on Car. 432, 437.

Even in cases where there has been an acceptance of the condition annexed to the contract for carriage as stated by Mr. Justice BROWN in Crary v. R. R. Co., 203 Pa. 525: "The agreement of the parties is, that there shall be no liability at all by the common carrier for injury to the passenger; but, on grounds of public policy the law says to the passenger that he cannot contract to relieve the carrier from negligence, and the carrier cannot, for any consideration, be absolved from its duty to exercise proper care in carrying its passengers. If, however, injury results from the negligence of the common carrier to one with whom such an agreement is made, the injured party, having taken himself out of the protection of the common law, which makes the railroad company that carries him an insurer of his safety, and which in case of accident resulting in injury, is presumed to have been negligent, must show affirmatively, as in all cases of negligence, the specific negligence complained of. See also National Line Steamship Co. v. Smart, 107 Pa. 492.

Such proof was not required in this case as the negligence of the carrier was admitted.

In our own case of Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297, we held: "The right of a bailor to limit his liability by special contract is well established, but this does not go to the extent of relieving against his own fraud or negligence." Such was the express statement of the law in Lancaster County National Bank v. Smith, 62 Pa. 47. We have more than once held that a bailor cannot stipulate against liability for his own negligence: Wright v. Adams Express Co., 43 Pa. Superior Ct. 40; Bullard v. D., L. & W. R. R. Co., 21 Pa. Superior Ct. 583; Lloyd v. Haugh, 223 Pa. 148.

The assignments of error are overruled and the judgment is affirmed.