## Rothenberg v. South Meadows Corporation

*Louis E. Meyer* of *Meyer, Brubaker & Whitman,* for plaintiff.

*H. Rank Bickel, Jr.* and *Robert E. Siegrist* of *Siegrist, Koller & Siegrist,* for defendant.

GATES, P. J., July 17, 1967.—On April 28, 1966, plaintiff filed a complaint in trespass against defendant for damages as a result of personal injuries allegedly suffered by him when a golf car he had rented from defendant malfunctioned. Plaintiff charges defendant with negligence in not warning plaintiff of the defects in the car and in not having the car properly inspected and in working order.

On October 11, 1966, defendant filed an answer to the complaint under a heading of "new matter" alleging that, on the date of the alleged accident and prior thereto, plaintiff entered into a written lease agreement with defendant under the terms of which plaintiff agreed that defendant shall be liable to no one for the negligent use or malfunction of any golf car, and

plaintiff released defendant from any claim arising out of the use of the golf car and agreed further to indemnify and save harmless the defendant from any liabilities for injury to third persons or property arising from the operation of any golf car.

On March 3, 1967, plaintiff filed preliminary objections demurring to the new matter pleaded in the answer, assigning as reasons therefor that, (1) defendant cannot, by agreement, be excused for acts of negligence, and (2) the agreement is legally ineffective.

By virtue of Pennsylvania Rule of Civil Procedure 1030, a defendant is required to plead, under the heading "new matter," a release by way of an answer to a plaintiff's complaint. Consequently, it is the proper procedure for a plaintiff to preliminarily object, in the nature of the demurrer, if the "new matter" is not a full and complete defense to plaintiff's complaint. Consequently, in the present posture of the record, the issue is ripe for our determination.

The release which defendant contends is a full and complete defense to plaintiff's cause of action is here set forth in full:

"1. Fairview Golf Course, a division of South Meadows Corporation, acting as agent for the above Lessor, hereby leases unto the Lessee(s) the golf car specified above, subject to the terms hereof.

"2. Use of any car is unauthorized unless this Agreement is signed by the Lessee Player(s).

"3. Golf Car Lessees certify that they have read and are familiar with the rules of Fairview Golf Course pertaining to the use of golf cars, and hereby agree that any violation thereof shall void this Agreement.

"4. Lessee(s) hereby agrees that Fairview Golf Course, agent, and Quentin Associates, Lessor, shall be liable to no one for the negligence use or malfunction of any golf car and Lessee(s) hereby release Quen-

tin Associates, South Meadows Development Corporation, its directors, officers and employees from any claim arising out of the use of said golf cars and agrees to indemnify and save harmless the Lessor, its agents, servants, and employees from any liability for injury to third persons or property arising from the operation of any golf car."

Admittedly, the validity of exculpatory contracts, such as the one here pleaded as a defense, is a matter of legal dispute among the various jurisdictions in this country under varying circumstances. The Supreme Court of Pennsylvania has articulated the attitude of our courts towards such an instrument in recent cases in the following language:

"The *validity* of a contractual provision which exculpates a person from liability for his own acts of negligence is well settled if the contract is between persons relating entirely to their own private affairs. An exculpatory clause in a lease which relieves a contractee (or contractor) from liability for injury or damage caused by fire, even though such fire results from the contractee's (contractor's) own acts of negligence is valid and enforceable 'if it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or the State but merely an agreement between persons relating entirely to their private affairs. . .' ": Dilks v. Flohr Chevrolet, 411 Pa. 425, 433.

We know of no public policy in this Commonwealth which is contravened by an exculpatory clause used in connection with the renting of golf cars. While it is a matter of personal interest to us, we are certain that it is not a matter of interest to the public in general. In brief, such an agreement is between persons relating entirely to their private affairs.

As we read the entire contract, the leasing of a golf car by defendant is conditioned upon the terms of the

contract. The contract specifically provides that no one not a signatory of the release is authorized to use any of the golf cars. The distinct language of the release agreement indicates that defendant shall not be liable for any claim arising out of the use of the golf cars and, specifically, the malfunctioning of a golf car.

We are aware of the legal requirement that we apply a strict construction to a contract which purports to release a party thereto from liability for acts of negligence, either past or future. But we fail to find anything but manifest and unequivocal language used in this release to indicate that defendant conditions the rental and use of golf cars upon the agreement to release the lessor from liability for the negligent use or malfunctioning of the golf cars.

Plaintiff contends that defendant is engaged in a "public enterprise"* and, therefore, the exemption from liability contract is void as against public policy. With this contention, we disagree. An extensive annotation in 175 ALR 8 supports our conclusion. It is there pointed out that public policy is considered adversely affected only where one of the parties is charged with a duty of public service, as in the case of public utilities and common carriers, or where the public is com-

---

* Plaintiff's reliance on Thomas v. First National Bank of Scranton, 376 Pa. 181, is misplaced. There the court clearly likened banks to common carriers and utility companies. At page 185, the court stressed the "public service" character of banks and the involvement of state and federal governmental agencies in their creation and operation.

Nor can plaintiff find support in Baione v. Heay, 103 Pa. Superior Ct. 529. There the court determined that the exculpatory terms on the back of a parking lot ticket could not be construed as a contract in the absence of a showing that the customer knowingly agreed to the terms of the agreement, citing as authority: Doyle v. Central R.R. Co., 45 Pa. Superior Ct. 216.

pelled to deal with him on his own terms, as in the case of bailees for hire who store for safekeeping the goods for others, such as warehousemen and parking lot operators, or where such person deals contemporaneously with several others, by negating liability through the use of printed forms, tickets or signs, or where the parties have no equal bargaining power. It is further noted that the equality of bargaining power is determined by the importance of the contract to the physical or economic well being of the party executing the release, and the extent to which competition exists in rendering the item contracted for. The annotation reveals that where there is no, or no great at least, disparity of bargaining power between the parties, contracts limiting liability for negligence will, as a general rule, be upheld on the theory of freedom of contract.

The complaint tells us that defendant is the operator of a golf and country club. We do not believe that the business of operating a golf club is in any way charged with a duty of public service or even quasi public service such as common carriers or warehousemen. The renting of golf carts is an incidental business activity in connection with the main activity of furnishing a place in reasonably good playing condition where individuals play golf. We are familiar with the fact that the playing of the game of golf in no way requires the use of a golf car. The more hearty are seen regularly toting their own golf bags. The less hearty can hire others to perform the chore, thus rendering this wholesome activity less burdensome. There are others who, for various reasons, prefer not to traverse the course on foot but combine the pleasure of playing with the easy mode of transportation supplied by using golf cars. In order to accommodate this purely private interest, defendant makes available, on a rental basis, golf cars which are used subject to the payment of a

rental fee and the execution of an exculpatory contract.

While it is true that a contract can be avoided for illegality, as we have here pointed out, none of the illegal attributes of an exculpatory contract are present under the facts in this case. Consequently, if defendant can prove the validity of the agreement alleged under his "new matter," he will have established a full and complete defense to plaintiff's claim for damages. Cf. Dohm v. Ponderosa Riding Stables, Inc., 41 D. & C. 2d 307.

Therefore, after due and careful consideration, we will make the following

## ORDER

And now, to wit, July 17, 1967, plaintiff's preliminary objections to defendant's new matter are overruled, and leave is granted to plaintiff to plead to the new matter within 20 days from the date of this order. Costs to abide the event.