## Lancaster County National Bank *versus* Smith.

1. Liability for loss of a bailment without compensation arises only on proof of gross negligence or want of ordinary care.

2. Smith, a stranger, and unknown to the officers of a bank, left bonds in care of the bank, retaining a list of minute description: the bonds were enclosed in an envelope, endorsed with his name and residence, and put into a vault with valuable securities of the bank and others. Sometime afterwards, a stranger, representing himself to be Smith, demanded the bonds from the teller, describing the bonds, giving the name and address accurately, but produced no other evidence of his identity; the teller delivered him the bonds. *Held*, under these and other circumstances in evidence, the question of negligence was for the jury.

3. The teller having testified to the facts of the transaction, was asked, whether, "from the circumstances that transpired, he believed the stranger was the proper owner?" *Held*, that the question was irrelevant.

4. The teller was asked, "Whether, as teller, &c., did you in this instance exercise the same care and diligence as you do in the general transaction of the business of the bank?" *Held*, that the question was irrelevant.

5. Had the loss been by unknown means, the question would have been admissible.

6. A bailee cannot stipulate against liability for his own negligence.

May 4th 1869.   Before Thompson, C. J., Read, Agnew and Sharswood, JJ.   Williams, J., absent.

Error to. the Court of Common Pleas of *Lancaster county :* No. 52, to May Term 1869.

This was an action on the case by Merritt Smith against the Lancaster County National Bank; the writ issued April 30th 1867.

The plaintiff declared that he had delivered to the defendant certain bonds to be taken care of and to be delivered to him on request, and by the carelessness, negligence and improper conduct of the defendant, the bonds had been lost.

J. H. Clark, the son-in-law of the plaintiff testified that on October 22d 1866 he went with plaintiff to the bank and asked Mr. Champneys, the teller, if he would receive some $3500 of government bonds on deposit.   Witness did not recollect any one being there but the teller ; he said he would ; the plaintiff produced the bonds in an envelope, the teller opened them and read the numbers, amount, &c., and witness made a memorandum in writing; the plaintiff had a memorandum which was compared with the one then taken.   The teller put the bonds into an envelope, asked the plaintiff's name, endorsed the envelope, and put it into the vault; the plaintiff told him he was going to the West and might have to order the bonds.   On the 23d of January 1867 witness went with plaintiff to the bank, and plaintiff asked the teller for the bonds; the teller after searching the vault said the bonds were not there.   After some unpleasant altercation the plaintiff and witness went away.

The memorandum of the bonds was given in evidence.

The plaintiff having given other evidence as to the demand for the bonds and as to their value, closed.

C. J. Rhodes, for defendant, testified that Smith and Clark came to the bank; Clark was asking Mr. Champneys for some bonds; Champneys said they were not there, but said he would look again ; he went to the vault, said he had looked where they kept such things, and they were not there, and "if you ever had them here, you took them away again."   Clark said he knew the bank was not responsible.

B. Champneys, the teller, testified that the plaintiff and Clark, who were strangers, and whom he did not know, came into the bank ; they had bonds which he refused to receive, saying that they did not take bonds from strangers ; both appeared equally urgent about leaving them ; the witness finally agreed to receive them ; they asked what would be the charge for keeping them ; witness told them the bank made no charge, and would not be responsible if they were stolen.   Plaintiff asked if he could send an order ; the teller gave him the register and he wrote his name in it; witness put the bonds into an envelope, wrote plaintiff's name and address on it, showed it to plaintiff, and put it away into

the vault, in a box where they kept the deposits. They took more care of this box than even their own bonds. The witness had forgotten these circumstances, when some time afterwards a person came into the bank and said he wanted "Merritt Smith's" bonds. Witness asked him if that was his name; he said it was; he mentioned the amount of the bonds; said he lived in Peach Bottom; witness looked and found a package directed with the name of Merritt Smith, Peach Bottom, and the amount exactly as he said; witness opened the envelope so that the person could not see what was in it, and made him describe the bonds; he did it correctly; he showed witness a list containing the numbers, &c., of the bonds, and witness then gave up the bonds.

The defendant then proposed to ask the witness:—

"Whether, from the description given of the bonds, of the name and residence of the owner and the list of the bonds with their respective amounts and numbers, presented to and examined by the witness, and other circumstances which transpired, he believed he was the rightful owner?" also,

"Whether, as teller of the Lancaster County Bank, did you in this instance exercise the same care and diligence as you do in the general transaction of the business of the bank?"

The questions were objected to by the plaintiff, rejected by the court, and several bills of exception sealed.

The witness further testified: On the 23d of January 1867 two persons came to the bank; one of them, the older, presented a small check, which was cashed, and then the person said he would take his bonds. He gave his name as Merritt Smith. Witness went to the vault and looked and said there were no bonds there; witness searched again, and told them their bonds were not there. The young man said that witness had taken a list of the bonds and name in the book; witness found the name Merritt Smith on the signature book; he had never kept an account there; both the plaintiff and Clark were unknown to the witness. The witness on cross-examination testified as to the manner in which the bank did business, as to paying checks to strangers, &c.

There was other evidence on both sides of the same general character as that before given by them respectively.

The plaintiffs asked the court to charge:—

1. That the confidence induced by undertaking any service for another is a sufficient consideration to create a duty in the performance of it; and the defendants having accepted the custody of the bonds in question, have created such a duty as to render them liable.

2. If the jury believe from the evidence that the plaintiff left the bonds in controversy for safe keeping, in the charge of the defendants, the defendants were bound to exercise ordinary care, skill and diligence, to keep and return the same safely to the

12 P. F. SMITH—4

[Lancaster County National Bank *v.* Smith.]

plaintiff, upon demand; and any negligence or failure so to keep them, renders the defendants liable.

3. If the jury believe that the plaintiff delivered the bonds in question to the defendants for safe keeping, and demanded to have them back, and the defendants have failed to deliver them upon such demand, it is incumbent upon the defendants, satisfactorily to account for their loss, and their failure to do so renders them liable for their value.

4. The whole evidence in this case, showing a delivery by plaintiff, and an acceptance by defendants of the bonds for safe keeping, a demand for same by plaintiff, and a refusal by defendants to deliver to plaintiff on such demand, the defendants failing to give any satisfactory account of the disposition of the bonds in their custody, renders them liable, and the verdict must be for plaintiff.

5. If the jury believe that an officer of the bank delivered the bonds in question to a person other than the owner, or some one authorized by him to receive them, and that such delivery was negligent, and ordinary care, skill and caution was not used, defendants are responsible, no matter how negligent they may be in the ordinary conduct of their own business.

The defendants asked the court to charge:—

2. The bailment in this case is a naked deposit without compensation to the bailee, or consideration, and the bailee is liable for gross neglect only, and is not liable if the bonds were stolen or obtained by fraud. The evidence shows that the defendant's agents took the same care of plaintiff's bonds that they did of the bonds, money and bills discounted of the bank, and the loss of the bonds being accounted for, the burden is on the plaintiff to prove negligence, and no evidence to that effect having been given, the verdict should be for defendants.

3. It is shown by the evidence that the deposit was accepted by the teller of the bank on his express declaration that the bank would not be in anywise liable, which was acceded to by the plaintiff, and the plaintiff therefore cannot recover.

4. That as it is clearly proved that the deposit of bonds, made in this case, with the Lancaster County National Bank, was a gratuitous deposit, the bank receiving no compensation for the safe keeping thereof;

That the depositor, Merritt Smith, and his son-in-law, Clark, were not and never had been customers of the said bank, and were unknown to the teller who received the deposits;

That at the time of the deposit a list of amounts, kind and numbers of the bonds, was taken by the depositor, and his name and address, to wit: "Merritt Smith, Peach Bottom," written upon the envelope in which the bonds were placed by the teller, there being no one else in the bank at the time the list of kind,

numbers and amounts of the said bonds was so taken, and the address so written upon the said envelope;

That the said bonds were afterwards delivered by the said teller to a person who asserted that he was Merritt Smith, who informed the teller that the bonds were in an envelope marked "Merritt Smith, Peach Bottom," who accurately described to the teller the numbers, kind and amounts of the said bonds, and who produced a list on which the numbers, kind and amounts of said bonds were accurately entered;

There was no negligence on the part of the defendant and the plaintiff cannot recover.

The court (Hayes, J.) charged :—

" This is a case of deposit without compensation; and it is well settled that he who receives such a deposit is liable only for the want of ordinary care in keeping it and returning it to the owner when demanded; and the question for the jury—a question of fact—is, whether such care was exercised by the defendants or not.

" It is clearly proved that the plaintiff left the bonds mentioned in the declaration, in October 1866 with the defendants on deposit, to keep for him, and that in January 1867 he called for these bonds and did not receive them on demand, but was told by the defendants that they had them not."

The points of the parties were answered as follows.    Plaintiff's :

" 1. The plaintiff having deposited the bonds with the defendants, and the defendants accepting the care and custody of them, a duty was created rendering the defendants liable for the want of ordinary care in keeping them for the plaintiff.

" 2. Any negligence amounting to a failure to exercise ordinary care, would, under the circumstances, make the defendants liable in this suit.

" 3. This is true, if the jury believe that the defendants have not satisfactorily accounted for the loss of the bonds, or have shown that they used ordinary care in keeping them for their owner.

" 4. The defendants are liable if they have failed in giving a satisfactory account of the disposition of the bonds left by the plaintiff with them.    If that account shows that they took ordinary care such as common prudence of the generality of men would use in keeping these bonds, they are not liable; but if it shows that they did not exercise ordinary care of this kind such as common prudence would have dictated to men of common business capacity, in the custody of these bonds, it would render the defendants liable to a recovery by the plaintiffs in this action.

" 5. This is correct as a legal proposition.    It is for the jury to say whether the act of the defendants in the delivery or giving

up of these bonds, was, under the circumstances, negligent and wanting in ordinary care, skill and caution. If it was, the defendants are responsible and bound to restore them to the plaintiff or their value."

The defendants' points:

"2. The first part of this proposition is correct. With respect to the care of the plaintiff's bonds received by the defendants, whether they took the same care of them as of their own bonds, money and bills, it is for the jury to determine, and also to decide whether the loss of the bonds has been satisfactorily accounted for, so as to show that the defendants exercised ordinary care, such as men of common prudence and common sense would use in regard to their own property; for if they did so, they are not responsible, but if they did not, they are liable to this action and the plaintiff is entitled to recover.

"3. There is no evidence that the custody of the bonds was received on any other than the usual terms on which such voluntary deposits are made—that the depositary, the bank, would be liable only in case of the want of ordinary care. If they exercised such care, under all the circumstances disclosed, they are not responsible for the loss of the bonds. If they did not, they are, and your verdict should be for the plaintiff.

"4. If these facts which appear to be all proved, satisfy the jury that there was no negligence in delivering up the bonds to the man who obtained them from the teller, and that ordinary care was, notwithstanding, under all the circumstances of the case, exercised in the care of these bonds deposited with them by the plaintiff, you should find for the defendants.

"There is something remarkable regarding the application for the bonds by the man to whom they were delivered according to the testimony relative to that fact, of Mr. Champneys. He said he was Merritt Smith. He produced and read a list of the bonds, their denomination, amounts and numbers, which Mr. Champneys found to be perfectly accurate. He told Mr. Champneys the amount contained in an envelope with the name of Merritt Smith, Peachbottom, endorsed. Mr. Champneys went into the vault, found the envelope just as the man described it, with the amount he had mentioned, $3500. He brought it out, opened it, and then asked this man to describe the bonds. He did so and correctly. He asked him if he knew any person in town? He said he did not, though, said he, I have a list here of the bonds and their numbers and amounts, and he produced it. Mr. Champneys looked at the list and gave up the bonds. If this detail of facts be true, a very gross fraud has been committed. Where did this man obtain his knowledge of these bonds—their particular description, amounts, &c.? How did he obtain the knowledge that Merritt Smith had made such a deposit with his name and

the address of Peachbottom added, endorsed upon it? Where did he get that list of the bonds? You will remember the testimony about the two lists, one brought by Mr. Smith to the bank, when he left the bonds, and the other made by Mr. Clark, when Mr. Champneys read over the denominations, sums and numbers; you will recollect Mr. McMullen's testimony of what Mr. Smith said about writing to a man in Chester county, who had inquired at the bank, and found the bonds there. But these facts raise a question in the case of consequence to the result.

"If you believe that this man who got the bonds was furnished with the list and the knowledge of the several denominations, sums and numbers of these bonds by Merritt Smith, and was thus enabled to obtain them of the bank, the plaintiff ought not to recover their value from the defendants.

"But if he did not obtain his knowledge and this list from the plaintiff, and the plaintiff had nothing to do with him, either by himself, by direct correspondence, or by his son-in-law Clark, as his agent, then the jury will say whether, under all the circumstances related by Mr. Champneys as attending the delivery of the bonds, there was a want of ordinary care in so giving up the bonds to that man. If there was a want of ordinary care in thus delivering the bonds, the plaintiff will be entitled to your verdict for the value. But if there was ordinary care exercised in the transaction, the plaintiff would not be entitled to recover, and your verdict should be for the defendants."

The jury found for the plaintiff $4184.50.

The defendants took a writ of error, and assigned for error:—

1, 2. The rejection of their offers of evidence.

3–10. The answers to the several points.

11. The judge throughout the entire charge repudiated the doctrine that a depositary without reward must be guilty of gross negligence to entitle the plaintiff to recover.

*G. F. Breneman* and *T. E. Franklin* (with whom was *S. H. Reynolds*), for plaintiffs in error.—The bailment being a pure deposit, without reward to the bailee, and solely for the benefit of the bailor, the bank was liable only for gross negligence: Shiells *v.* Blackburne, 1 H. Bl. 158; Story on Bailments, §§ 62–65; Code Civile, art. 1927; Tracy *v.* Wood, 3 Mason 132; In re Franklin Bank, 1 Paige Ch. Rep. 254; Story on Contracts 682–690; 2 Parsons on Contracts (5th ed.), 89–90 and notes; Edson *v.* Weston, 7 Cowen 278; Tompkins *v.* Saltmarsh, 14 S. & R. 275; Lloyd *v.* West Branch Bank, 3 Harris 176; Foster *v.* Essex Bank, 17 Mass. 500. The loss or non-delivery having been accounted for, the burden was on the plaintiff to prove negligence: Beckman *v.* Shouse, 5 Rawle 189; Farnham *v.* C. & A. R. R. C., 5 P. F. Smith 53; American Express Co. *v.* Sands, Id. 140. What

acts and conduct constitute negligence, or whether a given state of facts constitutes negligence, is generally a question of law: Catawissa R. R. Co. *v.* Armstrong, 2 P. F. Smith 286; Pittsb., F. W. & C. R. R. *v.* Evans, 3 Id. 250. The degree of care which is necessary to avoid the imputation of bad faith, is estimated by the carefulness which the depositary uses towards his own property of a similar kind: Lloyd *v.* West Branch Bank, 3 Harris 176.

*R. W. Shenk* and *O. J. Dickey*, for defendant in error, on the question of negligence cited Coggs *v.* Bernard, 2 Ld. Raymond 909; Steamboat New World *v.* King, 16 Howard 474.

The opinion of the court was delivered, May 24th 1869, by

THOMPSON, C. J.—The case on hand was a voluntary bailment, or more accurately speaking a bailment without compensation, in which the rule of liability for loss is usually stated to arise only on proof of gross negligence. The same idea is expressed with sufficient precision by the words used by the learned judge below, to wit, want of ordinary care. Whether there was want of ordinary care in the agents of the bailee in this case, was the question before the jury. On this point there was very material evidence, and it was properly referred to the jury with adequate instructions by the learned judge, to determine the question of negligence or the want of ordinary care. In the state of the testimony this was peculiarly the province of the jury. The court could not determine it. There was no error, therefore, in submitting the testimony on the point to the jury with instructions to find whether there was want of ordinary care in regard to the subject of the bailment or not.

The plaintiff in error complains of the rejection by the court of the proposed question to the witness Champneys, the teller and witness on the stand, whether from the circumstances detailed in the question, and which he had stated in his testimony in regard to the delivery of the bonds to the stranger personating Smith the bailor, he believed him to be Smith the owner? It was not pretended by the plaintiff that the teller had given them away under any other circumstances than mistake. Such an inquiry was therefore irrelevant. The testimony given by the witness was to show care, and to have proved by him that he believed the person to be the true owner would not have given any other character to the facts than they would possess without the testimony. It was not necessary to prove by the witness that he believed he was giving the bonds to the true owner. The *gravamen* of the plaintiff's action was negligence, not wilfulness. The witness might have believed that he was giving the bonds to the true owner, as no doubt he did, and been guilty of negligence in delivering them notwithstanding. The question if answered in the affirmative would have illustrated

[Lancaster County National Bank *v.* Smith.]

nothing, and added nothing to the facts, but might have led the jury from the true subject of inquiry arising out of the acts of the teller. For these reasons we see no error in refusing the offer.

Another ground of complaint on part of the plaintiff in error was the refusal of the court to allow the question to be asked the teller, whether he had exercised the same care and diligence in regard to the plaintiff's bonds, as in the general transactions of the business of the bank. This was properly refused. He had detailed the circumstances of the deposit, and the precise manner of the loss, and it was for the jury to say whether from this, and the evidence in the case, there was want of ordinary care. It was out of place, therefore, to supplement this by the opinion of the teller that what he had done in the matter was ordinary care. The jury would judge of this. Had the loss been by unknown means, the offer would doubtless have been admissible. But the means were known and detailed, and it would have been error to have allowed the witness to have testified that the loss was in the exercise of ordinary care, and this it was the object of the offer to prove. That was for the jury to decide on the testimony.

There was nothing whatever in the alleged terms of the bailment, even if conclusively shown to have been agreed upon, viz., that the bank would not be liable for the loss of the bonds " even if they were stolen." The limitation of liability did not and could not extend to cover the gross negligences of the bailee. We have more than once held that a bailee cannot stipulate against liability for his own negligence.

We have examined all the specifications of error in the case, and finding nothing wrong in the record, the judgment is affirmed.