## Smedley v. Hipple

*Lutz, Ervin, Reeser & Fronefield,* and *Fred T. Pusey,* for plaintiff.

*John E. McDonough,* for defendant.

MacDade, J., May 27, 1935.—This is a suit in assumpsit instituted by the plaintiff against the defendant to recover the market value of unrecovered goods which had been deposited in a warehouse in a building located on State Street in the Borough of Media, which warehouse was operated by the defendant and said goods had been stolen while in storage.

On or about September 1, 1932, the plaintiff entered into an oral agreement with the defendant, Harriet J. Hipple, whereby defendant agreed to accept for storage and safe keeping for the plaintiff in defendant's said storage house certain items of household furniture and personal effects of and belonging to the plaintiff, for the price or charge of $5 per month, which the plaintiff then and there agreed to pay. In pursuance of this oral arrangement, the plaintiff did, on or about September 1, 1932, deliver to the said storage house of said defendant certain items of household furniture and personal effects, which items were placed in a bin located on the second floor of the said building, upon which floor were five or six other bins used for the storage of goods of other persons. The defendant had a man by the name of James L. Doak, who was acting as her manager in the conduct of the said storage or warehouse business. The said James L. Doak also leased part of the first floor and basement of the said building in and from which, on his own account, he conducted a taxicab and bus business. Taxicabs and buses were located on part of the first floor and in the basement of the said building. An office was also located on the first floor of the said building, which office was used by the said Doak as an office for the conduct of the taxicab and bus business and which office was also used by him for the conduct of the storage or warehouse business of the defendant. The keys to all the storage bins located on the second floor as aforesaid were kept together upon one ring, which also had attached to it the key to the door which led to the second floor. No key was delivered to the plaintiff. The ring of keys, including that

to the plaintiff's bin, was kept sometimes upon a nail in the aforesaid office and sometimes in an unlocked drawer of a desk located in the aforesaid office. Ten or eleven taxicab drivers were employed by the said James L. Doak in his aforesaid business and all of these taxicab drivers, together with their friends, had free access to the aforesaid office at all times during the day and night. At times the aforesaid manager, James L. Doak, was present in the office and at other times he was not. The said manager, James L. Doak, permitted a man by the name of Ralph Burnley to also store some of his articles in the second floor of the said warehouse. During the three months' period commencing with the first of January 1933, and continuing down to the end of March 1933, the said Ralph Burnley on at least 12 different occasions, 11 by day and 1 by night, walked into the aforesaid office and obtained possession of the aforesaid key ring, either from the nail upon which it hung or from the unlocked drawer of the said desk, and removed large quantities of the goods which the plaintiff had stored in the bin located on the second floor of said storage house. The said Burnley, after removing the said goods, sold the same to various dealers located in and around the vicinity of Philadelphia, Camden, Delaware County, West Chester, and Wilmington. During the latter part of March 1933, the said theft or loss was discovered by the plaintiff, or her representatives, and immediately brought to the attention of the defendant. An investigation was then instituted by plaintiff, as a result of which it was discovered the said Ralph Burnley had taken and disposed of the goods as above described. A criminal proceeding was then instituted by the plaintiff against the said Ralph Burnley as a result of which he was brought to trial, convicted and sentenced. He was paroled so that he could assist plaintiff in locating and retrieving as much of her goods as possible. About two thirds of the stolen goods were recovered.

At the trial of the case the plaintiff offered competent

evidence to prove the market value of the goods at the time of loss, the evidence of which established the same at the figure of $780.15. A verdict was rendered in favor of the plaintiff in the sum of $500. Defendant, having presented a point for binding instructions and the same having been refused by the court, then filed a motion for judgment non obstante veredicto, which motion is now before the court for disposition. The evidence also established that the said manager, James L. Doak, on at least two occasions saw the automobile of the said Ralph Burnley in front of the storage house at times when the said Burnley was removing articles of plaintiff from the said warehouse. The evidence further establishes that the said Doak asked no questions of the said Burnley as to whose goods he was removing and made no inquiry concerning the matter. The evidence also established that during the original conversation between plaintiff and defendant, which took place on or about September 1, 1932, the defendant told plaintiff that she had a good, competent manager, James L. Doak, and that there was a watchman on duty at the said storage house during the night time. It was established that one of the taxicab drivers remained on duty in the aforesaid office on the first floor for the purpose of answering any incoming calls for taxicabs; that when a call would be received he would answer the call and render whatever taxicab service was requested, during which time he would be away from the said storage warehouse for whatever length of time was sufficient to answer the said taxicab call, and during which time the said storage warehouse would be left totally unprotected and without any watchman on duty. The evidence further established that the manager Doak permitted numerous boys and persons on numerous occasions to go to the second floor of said building, on which floor the aforesaid bins were located, for the purpose of getting out on the fire escape and also for the purpose of looking out the windows at athletic events which were taking place upon the athletic

field of the Media school located directly across State Street from the aforesaid storage warehouse building. It further established that on many occasions these persons were permitted to be on the second floor unaccompanied by the said manager.

Under the testimony adduced it was proper to submit to the jury the question whether the defendant had exercised reasonable and ordinary care for the safety of plaintiff's goods; or, in another way, whether the defendant had failed to exercise such care of plaintiff's goods as a reasonably careful owner of similar goods would exercise.

Under all the evidence it was clearly established beyond contradiction that the relationship of warehouseman and storer existed between plaintiff and defendant. It was further established beyond contradiction that plaintiff was not given and did not have a key to the warehouse or a key to the bin in which were stored her goods. The only keys to the warehouse and to the aforesaid bin were in the possession of defendant. Lawfully plaintiff could gain access to the aforesaid bin only by going to the warehouse and having defendant, through her manager or the son of her manager, produce the keys. The evidence further established beyond contradiction the agreement of plaintiff to pay to defendant the monthly sum of $5 for the storage of plaintiff's goods. The evidence of the plaintiff was that defendant at the time of the original conversation on or about September 1, 1932, was told by plaintiff something about the nature and value of the goods which she desired to have stored and that defendant told plaintiff she had a good manager and that a watchman was on duty at nighttime. The evidence upon which the question was submitted to the jury may be briefly summarized as follows:

1. The physical description of the entire building.

2. The character of the two businesses which were conducted in that building.

3. The number and character of persons in the building having access thereto.

4. The location of the office in which the keys were kept.

5. The manner of the keeping of the keys:

(a) That the key to the bin in which plaintiff's goods were stored was kept on a ring, which also contained the keys to all other bins in the said storage house as well as the key to the door leading from the first to the second floor (the floor where the aforesaid bins were located).

(b) The places where the said keys were kept, to wit, on a nail in the office or in an unlocked desk drawer located in the office.

(c) The failure to keep the key to the bin in which plaintiff's goods were stored so that numerous unauthorized persons could not have free access thereto during all hours of the day and night.

6. The fact that 10 or 11 taxicab drivers, together with their friends, were permitted to have free access at all hours during the day and night to the office in which the keys were openly kept.

7. The fact that the office doors were left unlocked so that the taxicab drivers, their friends and any other persons, could enter the office where the keys were kept unlocked, at all hours during the day and at many times during the night.

8. The fact that large numbers of persons were permitted on numerous occasions to go to the second floor, the floor upon which was located the bin where plaintiff's goods were stored, for the purpose of watching athletic sports conducted on the field of the Media school directly across the street from the aforesaid storage warehouse.

9. The fact that the thief, Burnley, could obtain the key to the bin in which plaintiff's goods were stored on at least 12 different occasions over a period of approximately 3 months, 11 of which were in the daytime and 1 at night, without any interference on the part of defendant or her manager, and in fact often without even the manager having knowledge thereof.

10. The fact that the thief could remove such a large quantity of goods, many of which were quite sizable, with-

out defendant's manager asking any questions or making any investigation thereof.

11. The fact that defendant's manager saw the car of the thief in front of the storage warehouse on two different occasions with some of plaintiff's goods plainly visible therein, and that he made no examination and asked no questions concerning the removal of the same.

12. The fact that the thefts could take place on the numerous occasions they did and over the period of time employed without defendant's manager learning of the thefts, notwithstanding the fact that he had in his possession the keys for entrance to the bin in which plaintiff's goods were stored, and notwithstanding the fact that he could see into the bin from the outside, through the spaces between the slats of the bin, and could see that substantially all of the goods were being removed therefrom.

Certainly there was an abundance of evidence to submit to the jury on the question of whether ordinary and reasonable care for plaintiff's goods had been employed by defendant; that is to say, whether defendant had taken such care of plaintiff's goods as an ordinary and reasonable person would take of his own goods.

The trial judge correctly applied in his rulings and charge the rule of law to a situation such as exists in this case and which has been stated in two different ways, both of which, however, mean exactly the same thing. In section 21 of the Warehouse Receipts Act, being the Act of March 11, 1909, P. L. 19, the rule is thus stated:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise; but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

In decisional law the rule has been thus stated:

"Where a bailment is for mutual benefit, the bailee . . . is held to the exercise of ordinary care": 6 C. J. 1121;

Rodgers v. Stophel, 32 Pa. 111; Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297; Hare v. Mulligan, 77 Pa. Superior Ct. 577; Moon v. First National Bank of Benson, 287 Pa. 398; Shapera v. Terrace Court Garage Co., 79 Pitts. 339; Smith v. Cohen, 116 Pa. Superior Ct. 395.

Each rule above stated means exactly the same thing. The essence of the statutory rule is that a warehouseman is liable for loss or injury to goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise. The essence of the decisional rule is that the bailee is held to the exercise of reasonable and ordinary care. This means that he must use such care as a reasonable and ordinary person would use in caring for his own goods. Thus it will be seen that the statutory and decisional rules mean one and the same thing. When the statute was passed by the legislature it merely codified the decisional rule which had existed for a long time prior thereto. The court in its charge to the jury, in this case, stated the rule in both of the two above mentioned ways. The rule as thus stated to the jury, by the court was entirely correct. It is certainly our belief that counsel for plaintiff and counsel for defendant agree in this conclusion.

Under our ruling based upon the law and evidence it was not necessary for plaintiff to offer evidence as to what ordinary practices of people engaged in similar activities were or would have been. Defendant has raised this question in the following language:

"There is no evidence as to what the ordinary practices of people engaged in similar activities were or would have been."

The answer to this question may be found in Lancaster County National Bank v. Smith, 62 Pa. 47, wherein the chief justice said:

"Another ground of complaint on part of the plaintiff in error was the refusal of the court to allow the question to be asked the teller, whether he had exercised the same care and diligence in regard to the plaintiff's bonds, as in the

general transactions of the business of the bank. This was properly refused. He had detailed the circumstances of the deposit, and the precise manner of the loss, and it was for the jury to say whether from this, and the evidence in the case, there was want of ordinary care. It was out of place, therefore, to supplement this by the opinion of the teller that what he had done in the matter was ordinary care. The jury would judge of this. Had the loss been by unknown means, the offer would doubtless have been admissible. But the means were known and detailed, and it would have been error to have allowed the witness to have testified that the loss was in the exercise of ordinary care, and this it was the object of the offer to prove. That was for the jury to decide on the testimony."

Defendant offered evidence to show that a sign was posted on the first floor of the premises to the effect that owner was not responsible for loss due to theft and fire. Defendant offered no evidence to show that the attention of plaintiff was directed to this sign or that plaintiff did have actual knowledge of the sign. Plaintiff testified that there was no such sign and that she never saw any such sign or had any notice or knowledge of the same. Under such circumstances plaintiff could not be bound by the terms thereof. In addition, defendant could not stipulate against liability for her own negligence. In the present case ample evidence was offered to show that the plaintiff's loss was directly caused by the negligence of defendant and by the failure of defendant to exercise ordinary and reasonable care in connection with goods of the plaintiff.

Indeed a bailee cannot stipulate against liability for his own negligence. Defendant could not divest herself of responsibility by placing a sign in her place of business unless it appeared from the evidence, or was found from the evidence, that attention had been brought to the plaintiff of the presence of that sign and that it was disregarded: Lancaster County National Bank v. Smith, 62 Pa. 47, at page 55; Doyle v. Central R. R. Co. of N. J.,

45 Pa. Superior Ct. 216; Baione v. Heavey, 103 Pa. Superior Ct. 529; Baione v. Heavey, 15 D. & C. 437; Lebenberg v. Gallino, 81 Pitts. 116.

The only case quoted in defendant's brief is the case of Bash v. Reading Cold Storage & Ice Co., 100 Pa. Superior Ct. 359, which case is not at all in point. In that case the plaintiff, a dealer in women's apparel, rented a room adapted for the storage of furs located in the defendant's plant. A key was given to the plaintiff so that he had access at all times to the room without in any way obtaining permission from the defendant, except that it was necessary for him to use the main entrance of defendant's building, which was open during business hours. On September 17, 1927, when the room was entered by the plaintiff it was discovered that there was dripping from numerous places in the ceiling a sticky, discolored liquid which came in direct contact with coats and damaged a number of them. Suit was brought alleging that defendant neglected to perform its duty in allowing the fluid to seep through the ceiling into the room in which the plaintiff's goods were stored. The court entered a compulsory nonsuit as there was no proof of negligence upon the part of the defendant or its employes. No evidence was offered that the damage resulted from leaking pipes, faulty refrigeration or other instrumentalities under its control. The court refused to strike off the nonsuit and on appeal to the Superior Court the lower court's action was affirmed. The Superior Court said, at page 362:

"In our view of this case, the contract was not a bailment but created a legal status of landlord and tenant. The plaintiff rented a room; he had the *exclusive* possession thereof with the right to use it as he saw fit. . . .

"If we assume that there was a relation of bailor and bailee, the burden of proof was upon the plaintiff to establish the alleged negligence as the bailee did not have exclusive possession of the property bailed. . . .

"Those cases, as well as the safe deposit box cases, cited also by the appellant, are not in point and are not in con-

flict with the generally recognized rule that where there is not exclusive possession, negligence is not presumed; it must be proven." (Italics ours.)

In the Bash case plaintiff had exclusive possession of the room and defendant had no possession thereof. In the case at bar the plaintiff was not given a key to the bin located in a room with other bins but in order to obtain access thereto was required to get the keys from the defendant. In the Bash case no evidence was offered to show that the sticky substance leaked through and damaged plaintiff's goods through any negligence on the part of defendant. In the case at bar, ample evidence was offered by plaintiff to show the careless keeping of the keys, as well as to show that numerous unauthorized persons were permitted to have free and easy access to those keys and free and easy access to the room and bin in which plaintiff's goods were stored. The Bash case was clearly a case of landlord and tenant. The case at bar is clearly a case of bailment. In the Bash case no evidence of negligence on the part of the defendant was offered or proved. In the case at bar ample evidence of negligence and the want of care on the part of defendant was offered by plaintiff.

The verdict was for the plaintiff in the sum of $500. The defendant has moved for judgment n. o. v.

### Order

And, now May 27, 1935, the above matter coming on to be heard by the court en banc, after due consideration thereof, together with briefs, the court doth order and decree that (1) the defendant's motion for judgment in her favor notwithstanding the verdict for the plaintiff be and is discharged sec. reg. et sec. leg., and (2) the prothonotary be and is hereby ordered and directed to enter judgment upon the verdict in favor of the plaintiff, Hannah Smedley, and against the defendant, Harriet J. Hipple. From William R. Toal, Media.